UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-12-0052 EMC |
| Plaintiff, | |
| v. | **FINAL PRETRIAL CONFERENCE ORDER** |
| ANTHONY McGEE, | |
| Defendant. _____/ | |

## I. TRIAL DATE & LENGTH OF TRIAL

Jury selection shall be held on February 19, 2013, at 8:30 a.m.

The jury trial shall begin on February 25, 2013, with opening statements. Trial days shall last from 8:30 a.m. to 2:00 p.m., except that the first day of trial (February 25, 2013) shall begin at 12:30 p.m. and end at 5:00 p.m. Thursdays are dark.

## II. PLAINTIFF'S MOTIONS IN LIMINE[1]

A.   Motion in Limine No. 1

The government asks the Court to bar Mr. McGee from offering as evidence his own out-of-court statements unless he does so through his direct testimony. The government argues that such statements would be hearsay. It also notes that Federal Rule of Evidence 802(d)(2) does not render such statements nonhearsay because the rule only allows a party to offer as evidence the *opposing*

---

[1] The government originally filed its motions in limine on October 15, 2012. *See* Docket No. 42 (motions). It filed superseding motions in limine on January 22, 2013. *See* Docket No. 74 (motions).

1

party's statement. *See* Fed. R. Evid. 802(d)(2) (providing that a statement "offered against an opposing party" is not hearsay). In other words, under the rule, while the government may offer as evidence Mr. McGee's own statements, Mr. McGee may not.

In response, Mr. McGee does not challenge the government's hearsay argument. Mr. McGee simply states that, "[a]t this time, [he] has no objection to the government's motion," although he "reserves the right to contest it, if and when it becomes relevant." Docket No. 77 (Opp'n at 3).

Although Mr. McGee has not presented a substantive opposition to the government's motion, and the government's hearsay argument seems to have merit, the Court defers ruling on the motion in limine in order to preserve Mr. McGee's right to present a defense. If, at any point, Mr. McGee intends to present evidence of his own out-of-court statements, then he shall notify the Court in advance, either in a sidebar or outside the presence of the jury, so that the Court may make a ruling as to whether the evidence is admissible.

B. <u>Motion in Limine No. 2</u>

The government asks the Court to preclude any reference by Mr. McGee to his potential sentence. The government notes that "[i]t has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992). This is reflected in the Ninth Circuit Model Criminal Jury Instructions. *See* 9th Cir. Model Criminal Jury Instruction No. 7.4 (providing that "[t]he punishment provided by law for this crime is for the court to decide[;] [y]ou may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt").

In response, Mr. McGee agrees with the prosecution that references to potential punishment are impermissible.

Accordingly, the Court **GRANTS** the motion in limine.

C. <u>Motion in Limine No. 3</u>

The government asks the Court to order Mr. McGee to fully comply with General Order No. 69 – *i.e.*, to not offer any *Giglio*/*Henthorn* information for local law enforcement officers until the Court has reviewed and pre-cleared the admissibility of the evidence. *See* N.D. Cal. Gen. Order No.

2

1  69 (stating that the defendant is "require[d] . . . to move *in limine* in advance of a hearing or trial to
2  introduce any records that the defendant believes are admissible").
3        At the hearing, Mr. McGee informed the Court that, in compliance with General Order No.
4  69, he had filed and served an in limine motion on or about February 1, 2013.  **The government**
5  **shall have until February 13, 2013, to file an opposition.**  The opposition may be filed under seal.
6  Absent further ruling of the Court, there shall be no reply brief.
7  D.      <u>Motion in Limine No. 4</u>
8        The government asks the Court to preclude Mr. McGee "from presenting any argument
9  pointing the finger at some other individual or individuals unless [he] can proffer or present
10 admissible evidence to that effect."  Docket No. 74 (Mot. at 5).  The government acknowledges that
11 "[a] defendant is entitled to prove his innocence by showing that someone else committed the
12 crime."  *United States v. Brannon*, 616 F.2d 413, 418 (9th Cir. 1980).  But it argues that the above
13 "procedure will ensure that there is at least some reasonable, admissible, and good faith evidentiary
14 basis to point the finger at someone else before prejudicial insinuations are made against those who
15 are not a party to this action and cannot defend themselves."  Docket No. 74 (Mot. at 8).
16       Notably, the government contends that, to the extent Mr. McGee intends to blame a third
17 party because the hotel room – where additional methamphetamine and packing material was found
18 – was actually rented out by a third party, that evidence should not be permitted because the
19 evidence "by itself neither undermines the evidence against [Mr.] McGee nor proves that anyone
20 else might be guilty of any crime."  Docket No. 74 (Mot. at 7).  In support of this argument, the
21 government notes that Mr. McGee had on his person "narcotics with packaging that was the *same* as
22 that found with additional narcotics in the hotel room."  Docket No. 74 (Mot. at 7) (emphasis
23 added).  The government also points out that the evidence of drugs in the hotel room has no impact
24 whatsoever on the "two firearms crimes charged against [Mr. McGee] stemming from the gun seized
25 from about his person."  Docket No. 74 (Mot. at 7).
26       In response, Mr. McGee argues that there is sufficient evidence of third-party culpability
27 such that he should be allowed to argue third-party culpability to the jury.  Mr. McGee focuses in
28 particular on the fact that the hotel room was rented out to a third party:

> Where, as here, the hotel registry showed that Mr. McGee was a guest and that another person was the registered occupant of the room where additional drugs were found, and the DNA evidence shows that the packaging containing additional . . . methamphetamine found in [the hotel room at issue] contained a mixture of DNA, and Mr. McGee is a possible, not a major, contributor, such evidence is highly relevant to who had access to and authority over the room, and thus, control of the drugs found therein.

Docket No. 77 (Opp'n at 4-5); *see also* Docket No. 73 (Pl.'s PTC St. at 5) (stating that "Mr. Fedor [an expert] swabbed the packaging that contained the additional methamphetamine recovered from Room 301 and determined that [Mr.] McGee was a possible contributor to that DNA mixture" and that "[t]he random chance that another unrelated man would be similarly included as such a contributor is about one in sixty thousand").

To the extent the government seeks to preclude Mr. McGee from arguing third-party culpability based on the evidence that the additional methamphetamine was found in a hotel room rented out to a third party, the Court **DENIES** the motion in limine. As Mr. McGee points out, the Ninth Circuit has emphasized that

> "[f]undamental standards of relevancy . . . require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged." This is so "*[e]ven if the defense theory is purely speculative*," because "it is the role of the jury to consider the evidence and determine whether it presents 'all kinds of fantasy possibilities' . . . or whether it presents legitimate alternative theories for how the crime occurred." In this context, our cases have relied on Wigmore's admonition that if evidence of third-party culpability "is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic, but should afford the accused every opportunity to create that doubt."

*United States v. Robert Darryl War Club*, 403 Fed. Appx. 287, 289 (9th Cir. 2010) (emphasis added); *see also United States v. Stever*, 603 F.3d 747, 754 (9th Cir. 2010) (making the same point). The government remains free to argue that Mr. McGee's third-party culpability theory lacks merit because of, *e.g.*, similar narcotics packaging or DNA evidence. The government also remains free to argue to the jury that, even if does not believe Mr. McGee to have been in possession or control over the methamphetamine found in the hotel room, that should have no impact on the firearms crimes

asserted against him. The government may also assert an aiding or abetting theory which Defendant conceded at the Pretrial Conference is implicit in the indictment under Ninth Circuit law.

### III.     DEFENDANT'S MOTIONS IN LIMINE

A.      Motion in Limine No. 1

Mr. McGee asks the Court to preclude the government from (1) offering the indictment as evidence because the words "felon" and "felony" are contained therein, (2) using the term "felon in possession" to describe one of the offenses at issue (*i.e.*, the alleged violation of 18 U.S.C. § 922(g)(1)), and (3) using the term "felon" to describe Mr. McGee. In essence, Mr. McGee's argument is that the words "felon" and "felony" should not be used because the offense charged – § 922(g)(1) – refers not to a felony but rather "a crime punishable by imprisonment for a term exceeding one year." *See* 18 U.S.C. § 922(g)(1). According to Mr. McGee, the fact that he did actually "suffer[] a prior felony conviction is irrelevant and immaterial to the offense charged, particularly in light of his stipulation that a prior conviction prohibited him from possessing a firearm under 18 U.S.C. § 922(g)(1)." Docket No. 43 (Mot. at 6).

In response, the government states that it does not intend to offer the indictment as evidence because it "believes that the charges can be presented to the jury in the form of a brief 'Statement of the Case,' such as presented in the [government's] Pretrial Conference Statement." Docket No. 79 (Opp'n at 2). However, the proposed Statement of the Case uses the word "felony," and the government argues that it should not be barred from using the terms "felon" or "felony" – whether in the Statement of the Case or otherwise – because § 922(g)(1) clearly covers felonies only; because it would be "cumbersome" for the parties to refer to, *e.g.*, a crime punishable by a term of imprisonment exceeding one year; and because the "awkward phraseology" could also inject confusion into the trial. Docket No. 79 (Opp'n at 3, 5). The government proposes that the Court adopt the approach taken by Judge Alsup in another criminal matter – *i.e.*, that the Court allow the government to use the words "felon" and "felony" "'but not repeatedly in such a way as to inflame the jury.'" Docket No. 79 (Opp'n at 3).

The Court is not unsympathetic to Mr. McGee's concern over the use of the term "felon" or "felony." However, as the government points out, it is clear that § 922(g)(1) covers felonies only.

Title 18 U.S.C. § 921(a)(20) provides that a "crime punishable by imprisonment for a term exceeding one year" does *not* include "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20)(B). Furthermore, under federal law, a crime punishable by a term of imprisonment of more than one year is classified exclusively as a felony. *See id.* § 3559(a). Accordingly, it is not surprising that federal courts – including the Supreme Court – have commonly understood § 922(g)(1) to apply to felons in possession of a firearm. *See* Docket No. 79 (Opp'n at 3-4) (citing cases).

To the extent Mr. McGee argues that, even if § 922(g)(1) covers felonies only, the use of the term "felon" or "felony" should still be proscribed because of the danger of unfair prejudice, that argument is undercut by the fact that the Ninth Circuit has implicitly endorsed use of the term, as reflected in its Model Criminal Jury Instructions. *See, e.g.*, 9th Cir. Model Criminal Jury Instruction No. 8.65 (titled "Firearms – Unlawful Possession – Convicted Felon"). But, to ensure that Mr. McGee is not unfairly prejudiced, the Court shall adopt the approach taken by Judge Alsup (to which the government is amenable) – *i.e.*, the government may use the terms "felon" and "felony" "'but not repeatedly in such a way as to inflame the jury.'" Docket No. 79 (Opp'n at 3).

To mitigate any undue prejudice, the Court shall require the government to explain to the jury, during its opening statement, that the term "felony" is simply a shorthand reference for a crime punishable by imprisonment for a term exceeding one year. Mr. McGee may reiterate such in his opening statement. The government is admonished not to use the term "felony" in a gratuitous or inflammatory manner before the jury.

Accordingly, the motion in limine is otherwise **DENIED**.

B.   Motion in Limine No. 2

Mr. McGee asks the Court to bar the government from introducing any evidence as to his prior conviction because, for purposes of the § 922(g)(1) offense, he "will stipulate that he suffered a prior conviction punishable by a term of imprisonment exceeding one year that prohibited him from possessing firearms." Docket No. 43 (Mot. at 7); *see also* Docket No. 68 (Def.'s PTC St. at 4)

(stating that he "intends to stipulate that a prior conviction prohibited him from possessing a firearm under 18 U.S.C. § 922(g)(1)").

The government has agreed to the stipulation.

Accordingly, the motion in limine is **GRANTED**.

C. <u>Motion in Limine No. 3</u>

Mr. McGee aks the Court to exclude any "other acts" evidence pursuant to Federal Rule of Evidence 404(b). Mr. McGee argues that, under Rule 404(b), the government is required to provide notice of its intent to offer any "other acts" evidence; he further argues that, because "the government has not filed any [such] notice . . . , [he] files this motion as a prophylactic measure to ensure that the Court [does] not permit any late disclosure of such evidence." Docket No. 43 (Mot. at 8).

Under Rule 404(b),

> [o]n request by a defendant in a criminal case, the prosecutor must:
>
> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>
> (B) do so before trial – or during trial if the court, for good cause shown, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(2). The advisory committee notes for Rule 404(b) make the following comments regarding this provision:

- "The Rule expects that counsel for both the defense and the prosecution will submit the necessary request and information in a reasonable and timely fashion."
- "Other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes a reasonable request or disclosure will depend largely on the circumstances of each case."
- "[N]o specific form of notice is required."

Fed. R. Evid. 404(b), 1991 advisory committee notes.

Apparently construing Mr. McGee's motion as a "request by [the] defendant," Fed. R. Evid. 404(b)(2), the government states that "[t]he only 404(b) evidence [it] intends to offer at trial are text messages found on [Mr. McGee's] cell phone that indicate he was engaged in drug sales near the

7

date in question." Docket No. 79 (Opp'n at 6).  While Mr. McGee has objected to evidence of the cell phone and the text messages contained on it, *see* Part IV.A.3.a, *infra*, he has not done so on the basis of Rule 404(b).  The Court thus rules as follows.

First, with respect to the cell phone and text messages, the government has not violated Rule 404(b)'s notice requirement, and thus the motion in limine is **DENIED**.  The Court shall address Mr. McGee's objections to the cell phone and text messages on non-404(b) grounds below.  *See* Part IV.A.3.a, *infra*.  Second, to the extent Mr. McGee seeks a ruling that the Court shall not permit any other "other acts" evidence, the Court defers a ruling because, under Rule 404(b), a disclosure during trial may be permissible in limited circumstances.  If, at any point, the government intends to introduce "other acts" evidence (other than the cell phone and text messages), then the government shall notify the Court in advance, either in a sidebar or outside the presence of the jury, so that the Court may make a ruling as to whether the evidence is admissible.  The Court notes, however, that the government has represented it does not intend to introduce other 404(b) evidence; absent good cause, the government will be held to that representation.

D.   Motion in Limine No. 4

Mr. McGee asks the Court to bar evidence of his parole status, which would include (but not be limited to) evidence that he told police officers, during his arrest, that he was on parole and evidence that he was wearing an ankle bracelet at the time of his arrest.  Mr. McGee argues that this evidence should be excluded because it is irrelevant to any of the charged offenses and is highly prejudicial because it is "suggestive of a prior bad act."  Docket No. 43 (Mot. at 9).

As reflected in its papers, the government initially took the position that "it will not introduce evidence relating to the defendant's parole status at trial" during its opening case but "reserves the right to use such evidence in rebuttal . . . or in the event the defendant opens the door through argument or cross-examination."  Docket No. 79 (Opp'n at 8).  At the hearing, however, the government raised one concern regarding Mr. McGee's parole status.  That is, although the government did not want to refer to Mr. McGee's parole status during trial, it also wanted to ensure that the jury would not think that the search of the hotel room was improper when, in fact, law enforcement was entitled to conduct the search as a result of his parole status.  The government

suggested that the jury be instructed that the search of the hotel room was legal or at least its legality is not an issue for the jury.  Mr. McGee indicated that he was opposed to such an instruction.

In light of this new issue, the Court defers ruling on the motion in limine.  The parties shall meet and confer to determine whether they can reach an agreement on an instruction that could be given to the jury.  **If not, then, on February 13, 2013, the government shall submit a brief providing a proposed instruction and any argument in support thereof, and, in a cross-brief, Mr. McGee shall explain why that instruction should not be given and/or whether an alternative instruction should be given instead.**

E.   Motion in Limine No. 5

Mr. McGee asks the Court to designate all government witnesses as under a defense subpoena unless released.

In response, the government states that it "has no objection so long as any defense witnesses are likely considered under government subpoena as well."  Docket No. 79 (Opp'n at 8).

Accordingly, the Court **GRANTS** Mr. McGee's motion and further deems any and all defense witnesses under government subpoena as well.

## IV.   WITNESSES & EXHIBITS

A.   Government's Witnesses and Exhibits

The government has submitted a witness list for its case-in-chief – 17 individuals are identified – "but reserves the right to supplement or amend this list as necessary."  Docket No. 62 (Pl.'s Witness List at 1).  Of those identified, 6 are experts: (1) Tom Fedor; (2) Marco Romo; (3) Ken Zink; (4) ATF special agent ("who will establish that the firearm and ammunition at issue traveled in interstate commerce")[2]; (5) SFPD CSI Officer Rodelas; and (6) ATF Special Agent Richard Timbang.  *See* Docket No. 73 (Pl.'s PTC St. at 3) (adding that the last two would not appear to offer any opinion testimony but have been identified as experts "in an abundance of caution").  The government's list "does not include those witnesses that the government would call in order to

---

[2] **As discussed at the hearing, the government shall identify the expert by February 8, 2013.  The government shall also turn over any Jencks material by that date.**

9

establish a chain of custody for the firearm and the narcotics, if proof of such chain becomes necessary." Docket No. 62 (Pl.'s Witness List at 1).

The government has also submitted an exhibit list for its case-in-chief – 28 items are identified – "but reserves the right to supplement or amend this list as necessary." Docket No. 66 (Pl.'s Ex. List at 1). The government's list "does not include those exhibits that the government would call in order to establish a chain of custody for the firearm and the narcotics, if proof of such chain becomes necessary." Docket No. 66 (Pl.'s Ex. List at 1).

### 1. Chain of Custody

As the Court ordered at the hearing, the parties shall meet and confer to determine whether they can reach any stipulations on chain of custody. **By February 13, 2013, the parties shall submit a joint statement addressing what stipulations, if any, have been reached. In the event that chain of custody remains an issue, the government shall identify (by February 13) witnesses who will testify as to the chain of custody.**

### 2. Prior Convictions of Witnesses

As the Court ordered at the hearing, the government shall confirm whether there are any prior convictions for its witnesses, including hotel clerk Vishu Shah. **The government shall inform Mr. McGee no later than February 13, 2013.**

### 3. Mr. McGee's Objections

#### a. Cell Phone, Text Messages, and Testimony of Richard Timbang

Mr. McGee first objects to the government's Exhibits 15 (a cell phone) and 27 (text messages recovered from the cell phone) as well as any related testimony by ATF Special Agent Timbang. According to the government's witness list, Agent Timbang "will testify about the forensic analysis he performed on the defendant's cellular phone and about the text messages he recovered from that phone." Docket No. 62 (Pl.'s Witness List at 3). Presumably, Mr. McGee also means to object to related testimony by California Department of Justice Task Force Agent Zink, who will provide testimony about the text messages as well – *e.g.*, "that drug traffickers often use text messages to communicate a drug deal, but rarely specify that the deal is, in fact, for drugs." Docket No. 61 (Pl.'s Summary of Zink Testimony).

1    Mr. McGee's primary objection is insufficient authentication.[3]  More specifically, he
2 contends that there is insufficient evidence to establish that he owned the cell phone or that he
3 authored the text messages.  The Court overrules the objection.
4    Federal Rule of Evidence 901(a) provides that, "[t]o satisfy the requirement of authenticating
5 or identifying an item of evidence, the proponent must produce evidence sufficient to support a
6 finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Evidence can be
7 established as authentic based on the "[t]estimony of a [w]itness with [k]nowledge" – *i.e.*,
8 "[t]estimony that an item is what it is claimed to be."  Fed. R. Evid. 901(b).  Notably, a court's job at
9 this juncture is simply to make a limited "determination whether sufficient proof has been
10 introduced so that a reasonable juror could find in favor of authenticity."  *Ricketts v. City of*
11 *Hartford*, 74 F.3d 1397, 1411 (2d Cir. 1996) (internal quotation marks omitted).  So long as a jury
12 could find authenticity, "it must be given the opportunity to do so."  *Id.*; *see also United States v.*
13 *Holmquist*, 36 F.3d 154, 167 (1st Cir. 1994) (stating that, "[i]f the court discerns enough support in
14 the record to warrant a reasonable person in determining that the evidence is what it purports to be,
15 then Rule 901(a) is satisfied and the weight to be given to the evidence is left to the jury") (internal
16 quotation marks omitted).
17    In the instant case, it appears that the government will lay out a case for authenticity based
18 on "recovery of [the] phone from near [Mr. McGee's] person immediately after [the] struggle with
19 police."  Docket No. 66 (Pl.'s Ex. List at 5).  In response, Mr. McGee asserts that "[p]roximity alone
20 is insufficient to establish that the cellular phone belongs to Mr. McGee."  Docket No. 78 (Obj. at 4).
21 However, he cites no authority to support this claim.  Moreover, there is case law to the contrary.
22 For example, in *United States v. Trujillo*, 146 F.3d 838 (11th Cir. 1998), the Eleventh Circuit noted
23 that "'the government may authenticate a document solely through the use of circumstantial
24 evidence, including . . . the circumstances surrounding its discovery.'"  *Id.* at 844; *see also United*

---

[3] Mr. McGee also makes hearsay and relevance objections but those objections are predicated on his first objection of insufficient authentication.  *See* Docket No. 78 (Obj. at 4-5) (arguing that "any text messages not allegedly authored by Mr. McGee would not be admissible" as a statement by a party-opponent under Rule 801(d)(2)(A); also arguing that the text messages cannot be evidence of Mr. McGee's intent "because the government cannot show that the cellular phone belonged to Mr. McGee" in the first place).

1  *States v. Dumeisi*, 424 F.3d 566, 575 (7th Cir. 2005) (taking into account "circumstances

2  surrounding discovery"). Accordingly, in *Trujillo*, the Eleventh Circuit held that there was

3  sufficient evidence to authenticate a note for admissibility purposes where

> Special Agent Velez testified that he along with Detectives Romero and Hopkins "booked" Trujillo – that is, secured Trujillo's property, read him his Miranda rights and asked him other booking and administrative questions. Trujillo then asked to use the restroom. While in the restroom, Velez heard Romero yell that Trujillo was eating something, and Velez rushed into the bathroom. He observed Romero and Hopkins pulling Trujillo out of the toilet area, and saw a piece of paper "flutter" into the toilet. A piece of paper taken from Trujillo's mouth matched the piece of paper that dropped into the toilet. The paper had the number "591" written on it. At trial, the government introduced taped conversations discussing, the fact that 591 kilograms of the air-dropped cocaine belonged to "the Colombians." Rodriguez also testified to this fact. Velez testified that he retrieved the paper from the toilet, and that Hopkins gave him the paper retrieved from Trujillo's mouth approximately two to three minutes later. Velez, however, did not see Romero or Hopkins obtain this piece of paper.

13 *Trujillo*, 146 F.3d at 843-44; *cf. United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997)

14 (approving introduction of written materials as sufficiently authenticated because, *inter alia*, they

15 were found in an isolated campsite occupied only by the defendant).

16     Taking into account the above case law, the Court finds that a reasonable jury could find the

17 cell phone to be Mr. McGee's because it was found near his person immediately after the struggle

18 with the police. Of course, this does not bar Mr. McGee from arguing to the jury that the cell phone

19 did not in fact belong to him or that, even if it did, he was not the author of the text messages on the

20 phone.

21     Mr. McGee argues still that, even if there is no authenticity problem, "the text messages do

22 not indicate prior drug sales, such that their probative value would outweigh the prejudicial effect

23 inherent in allowing the prosecution to argue that the text messages are evidence of prior drug

24 dealing." Docket No. 78 (Obj. at 5). In short, Mr. McGee seeks exclusion pursuant to Federal Rule

25 of Evidence 403. *See* Fed. R. Evid. 403 (providing that a "court may exclude relevant evidence if its

26 probative value is substantially outweighed by a danger of . . . unfair prejudice"). The Court

27 overrules this objection as well. Mr. McGee's argument is predicated, in essence, on a lack of

28 probative value, but the government will provide testimony from Agent Zink that

> drug traffickers often use text messages to communicate a drug deal, but rarely specify that the deal is, in fact, for drugs. In this case, on September 26, 2011, text messages on the . . . cell phone indicate that [Mr. McGee] was engaged in "fronting" 40 of something that is never specified. Agent Zink will testify that this conversation is consistent with a drug sale.

Docket No. 61 (Pl.'s Summary of Zink Testimony at 3). So long as Agent Zink can lay a sufficient foundation for his expert testimony, given the temporal proximity of the text message to the arrest, there is no Rule 403 problem.

b. <u>Testimony of Ken Zink</u>

In its witness list, the government explains that

> [California Department of Justice Task Force] Agent Zink will testify that the methamphetamine possessed by [Mr. McGee] and found in Room #301 at the Auburn Hotel was intended for distribution based on all the facts and circumstances of the case. Additionally, Agent Zink will testify about: (1) the distribution chain of methamphetamine; (2) the approximate dosage amounts for methamphetamine; (3) the street price paid by methamphetamine users; (4) methods of street traffickers of methamphetamine; (5) the methods used by methamphetamine traffickers to avoid detection by law enforcement, including but not limited to the use of code words; and (6) terminology and slang used by methamphetamine traffickers."

Docket No. 62 (Pl.'s Witness List at 3); *see also* Docket No. 61 (Pl.'s Summary of Zink Testimony).

In his papers, Mr. McGee objects to categories (1), (3), (5), and (6) above.

i. <u>Distribution Chain of Methamphetamine</u>

In its initial papers, the government indicated that Agent Zink's testimony on the distribution chain of methamphetamine would cover, *e.g.*, (1) how a large portion of methamphetamine sold in the Bay Area is made in Mexico and smuggled into the United States and how the drug – once in the Bay Area – is sold to other distributors and eventually to the people who use the drug and (2) how significant quantities of methamphetamine are manufactured in the United States, a process that often takes place in a house rented by the drug manufacturers and located in a rural area. *See* Docket No. 61 (Pl.'s Summary of Zink Testimony at 2). In supplemental papers, however, the government clarified that Agent Zink's testimony would not be so broad and that it would simply indicate that "there is a chain of distribution for methamphetamine and that part of that distribution

13

chain involves street-level dealers, who typically deal in the quantities of methamphetamine [Mr.] McGee was carrying on the night of his arrest." Docket No. 82 (Pl.'s Resp. at 4).

Because the government has voluntarily agreed to limit Agent Zink's testimony to the above, the Court overrules Mr. McGee's objection.

### ii.     Street Price Paid by Methamphetamine Users

In its papers, the government states that Agent Zink will testify that "[t]he user price for methamphetamine in 2011 was approximately between $50 and $100 per gram," with the price variance being "based on many factors, including the purity of the methamphetamine, the relationship between the parties, and the geographic location of the sale." Docket No. 61 (Pl's Summary of Zink Testimony at 2-3).

Mr. McGee objects to this topic of testimony largely on the basis of relevance and prejudice. *See* Docket No. 78 (Obj. at 6) (noting that "no money was found on Mr. McGee's person, nor was any money found in Room #301, where other drugs and paraphernalia were found"). The objection is overruled. The government has adequately explained why the street price has probative value – *i.e.*, to support the likelihood that the drugs were for distribution rather than personal use. *See* Docket No. 82 (Pl.'s Resp. at 4) (arguing that the jury should have "basic information as to just how much money buying drugs 'in bulk' might cost"). The probative value is not "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

### iii.    Code Words, Terminology, and Slang Used by Methamphetamine Traffickers

According to the government, "Agent Zink will testify that [to avoid detection by law enforcement] drug traffickers often use code words or slang terms when discussing drugs, including methamphetamine." Docket No. 61 (Pl.'s Summary of Zink Testimony at 3). Agent Zink will also testify that "drug traffickers often use text messages to communicate a drug deal, but rarely specify that the deal is, in fact, for drugs." Docket No. 61 (Pl.'s Summary of Zink Testimony at 3).

Mr. McGee objects to testimony about slang because "[n]o statements made by Mr. McGee involving slang terms have been discovered by the defense," and thus the testimony has no relevance and is a waste of time. Docket No. 78 (Obj. at 6). The objection is overruled. The

14

government has pointed to some use of slang or code words in the text messages recovered on the cell phone. *See, e.g.*, Docket No. 82 (Pl.'s Resp. at 5). Furthermore, as the government notes, the Ninth Circuit has held that "drug-enforcement experts may testify that a defendant's activities were consistent with a common criminal modus operandi." *United States v. Webb*, 115 F.3d 711, 713 (9th Cir. 1997). So long as Agent Zink can lay a sufficient foundation for his expert testimony, there is no relevance or Rule 403 problem. However, if Agent Zink offers testimony purporting to interpret the slang terms found in the text messages, the government will have to lay a foundation for his knowledge and expertise for interpreting the terms used in this case. He will not be allowed to speculate.

### c. Written Reports

Finally, Mr. McGee objects to several reports offered by the government as evidence (Exhibits 9-10, 14A-C, 21-22, 26). These are "all written reports prepared by government agencies for use at trial" (*e.g.*, a forensic report, drug testing reports). Docket No. 78 (Obj. at 7). Mr. McGee objects to the exhibits on the basis of hearsay, although he seems to concede that the exhibits will be admissible so long as there is a sponsoring witness. *See* Docket No. 78 (Obj. at 7) (arguing that "introduction of those materials, without testimony by the respective sponsoring witnesses, would violate the Confrontation Clause"). In light of Mr. McGee's concession, the Court defers ruling on the objection. If the government seeks to introduce any of the exhibits without a sponsoring witness, Mr. McGee may raise his hearsay objection at that time.

To the extent Mr. McGee has objected to Exhibit 9 (or for that matter Exhibit 7) on the basis that "expired water" was used in the DNA swab, *see* Docket No. 66 (Pl.'s Ex. List at 2), the Court overrules the objection. As the government notes, that objection largely goes to weight and not admissibility. Mr. McGee has not made any *Daubert* motion.

B. Mr. McGee's Witnesses and Exhibits

Mr. McGee has submitted a witness list – identifying 2 witnesses – "but reserves the right to supplement or amend [the] list as necessary." Docket No. 83 (Def.'s Witness List at 1).

Similarly, Mr. McGee has submitted an exhibit list – identifying 5 exhibits – "but reserves the right to add to it pursuant to his right to an effective defense, should further discovery by received by the defense or become relevant." Docket No. 69 (Def.'s Exhibit List at 1 n.1).

### 1. Witnesses

Because Mr. McGee did not file and serve his witness list until only recently, the government has not had an opportunity to make any objections. **To the extent the government has any objections to Mr. McGee's witnesses, it shall raise them by February 13, 2013.** The government should take into account the Court's rulings in this order in raising any objections (although it may make an objection solely for purposes of preserving the right to appeal).

### 2. Photographs of Mr. McGee and Medical Records

Mr. McGee intends to offer photographs of himself taken on November 18, 2011, *i.e.*, the date he was arrested by the police, as well as medical records from that date (Exhibits 1A-B and 2). The government objects to the above evidence both on the basis of relevance and prejudice. The government further objects to the medical records on the ground that they may present other evidentiary problems (*e.g.*, hearsay, expert witness).

At the hearing, the Court asked Mr. McGee to establish the relevance of the evidence. Mr. McGee argued that the evidence shows that he sustained serious injuries as a result of the police officers' actions and that the officers were therefore motivated to cover up their conduct – *i.e.*, the officers were motivated to make an arrest that would justify the amount of force used. The Court concludes that, at the very least, the evidence is inadmissible under Rule 403; it is also not relevant as proffered.

First, the probative value of the evidence is nil or minimal at best. To the extent Mr. McGee is arguing that the officers lied about Mr. McGee's alleged crime in order to justify the amount of force they used, there will already be ample evidence about the amount of force the police used, including but not limited to the video from the hotel surveillance camera. The officers are likely to admit, as they did at the suppression hearing, that they used substantial force and delivered blows to Mr. McGee. Defendant has not pointed to anything in the police reports that is inconsistent with

their testimonies on the use of force.  Hence, the use of force Defendant seeks to document with the photographs have no probative value as to the officers' motive to lie.

Second, the danger of unfair prejudice – not to mention confusing the issues and misleading the jury – is high.  The precise extent of Mr. McGee's injuries is largely a collateral matter.  The Court has serious concerns that allowing evidence on a collateral matter would transform this case into an excessive force case, particularly in light of the government's position that, if the evidence is admitted, then they should be allowed to introduce evidence as to the police officers' state of mind at the time (*i.e.*, they believed that Mr. McGee had a gun which justified the force used).

Because the danger of unfair prejudice substantially outweighs the probative value of the evidence, the Court **GRANTS** the motion in limine.  This ruling, however, is without prejudice.  If, for example, the officers testify that they used a level of force that is inconsistent with the evidence, then Mr. McGee may be entitled to rely on the photographs and medical records for impeachment purposes.

In light of the Court's ruling above, one of Mr. McGee's intended witnesses – *i.e.*, the custodian of records for San Francisco General Hospital – shall not be permitted to testify unless, *e.g.*, the government opens the door to the evidence.

### 3. Hotel Registry Documents

Mr. McGee intends to offer hotel registry documents to "[r]efute possession."  Docket No. 69 (Def.'s Ex. List at 1).  Presumably, Mr. McGee means that he will offer the evidence to show that he was not in possession or control of the additional methamphetamine found in the hotel room (rather than on his person).  The government objects to the evidence, arguing that while Mr. McGee "can fairly point out that he was not the registered occupant of Room 301, [he] should not be able to provide evidence of the name of the registered occupant and claim that this 'missing' individual is really the responsible party."  Docket No. 80 (Opp'n at 4).

For the reasons discussed in Part II.D, *supra*, the government's objection is overruled.

### 4. Personnel Records of Testifying Police Officers

Mr. McGee intends to offer the personnel records of one testifying police officer (Exhibit 4) to "[i]mpeach [his] credibility."  Docket No. 69 (Def.'s Ex. List at 1).  As noted above, Mr. McGee

has submitted an in limine motion in compliance with General Order No. 69. *See* Part II.C, *supra*. **The government shall file an opposition by February 13, 2013.**

### 5. SFPD Firearm Information Report

In his exhibit list, Mr. McGee states that he intends to use the "SFPD Firearm Information Report" (Exhibit 5) to "[r]efute possession." Docket No. 69 (Def.'s Ex. List at 1). In response, the government states that the exhibit appears to be the same as one of the government's own exhibits (*i.e.*, the government's Exhibit 26). The government states that it has no objection to Mr. McGee relying on the report but adds that Mr. McGee now appears to contest the admissibility of the report, as discussed above. *See* Part IV.A.3.c, *supra*.

Consistent with the Court's ruling above, the Court defers ruling on Mr. McGee's objection to the report (if there remains such an objection). If the government seeks to introduce the report without a sponsoring witness, Mr. McGee may raise his hearsay objection at that time.

## V. DEMONSTRATIVES

At the hearing, the parties represented that, at this juncture, they do no intend to use demonstratives. If a party subsequently decides to use a demonstrative, that party should give the opposing party at least one day's notice prior to use of the demonstrative to ensure that any objection may be raised with the Court in advance of use.

## VI. JURY VOIR DIRE

The Court has reviewed the parties' proposed voir dire. The Court intends to ask the following questions proposed by the parties:

- Government: Proposed Questions Nos. 3, 6, 8, 10, 13, 16, 17, and 21.
- Mr. McGee: Proposed Questions Nos. 2, 3, 4, 6, 7, 8, 10, 13, and 15.

As to Mr. McGee's Proposed Question No. 10, the parties shall meet and confer to determine which they can reach agreement on an alternative wording. **If not, then on February 13, 2013, the parties shall each file a statement, stating what each party's proposed wording is.** This ruling is without prejudice to counsel's attorney-led voir dire.

### VII. <u>JURY INSTRUCTIONS</u>

The Court shall file shortly hereafter proposed jury instructions. **The parties shall provide comments on the instructions by February 13, 2013.**

### VIII. <u>JURY VERDICT FORM</u>

The government has submitted a proposed verdict form. **If Mr. McGee has any objection to the government's proposed form, he must make it by February 13, 2013.**

This order disposes of Docket Nos. 43, 74, and 78.

IT IS SO ORDERED.

Dated: February 6, 2013

_____
EDWARD M. CHEN
United States District Judge