1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    UNITED STATES OF AMERICA,                    Case No.  12-cr-00052-EMC-1

8                   Plaintiff,

9          v.                                     ORDER DENYING DEFENDANT'S
                                                  MOTION FOR INDICATIVE RULING
10   ANTHONY MCGEE,

11                  Defendant.                    Docket No. 329

12

13

14          Currently pending before the Court is Defendant Anthony McGee's motion for an

15   indicative ruling.  *See* Fed. R. Crim. P. 37.  Specifically, Mr. McGee seeks an indicative ruling on

16   a motion to reconsider that he filed after he appealed this Court's order revoking his supervised

17   release.  Having considered the parties' briefs,[1] as well as all evidence of record, the Court hereby

18   **DENIES** the motion for an indicative ruling.

19                       **I.        FACTUAL & PROCEDURAL BACKGROUND**

20          In 1994, at the age of 17, Mr. McGee was subject to state juvenile court proceedings based

21   on a violation of California Penal Code § 288(b)(1).  Section 288(b)(1) criminalizes lewd or

22   lascivious acts with a child under fourteen by force.  It is a felony.  Mr. McGee was ultimately

23   sentenced to a custodial sentence at the California Youth Authority ("CYA") and was paroled in

24   November 2000.

25          Many years later, in 2012, criminal proceedings were initiated against Mr. McGee in this

26   Court (*i.e.*, federal court).  In 2013, after a jury trial, Mr. McGee was found guilty of (1) being a

27   ────────────────────

28   [1] This includes the supplemental brief that Mr. McGee filed (even though it was filed without
     leave of Court).  *See* Docket No. 331.

*(left margin, vertical text)* United States District Court  Northern District of California

felon in possession of a firearm, *see* 18 U.S.C. § 922(g); (2) possessing methamphetamine with intent to distribute, *see* 21 U.S.C. § 841; and (3) carrying a firearm during and in relation to a drug trafficking offense or possessing a firearm in furtherance of a drug trafficking offense. *See* 18 U.S.C. § 924(c). *See* Docket No. 118 (jury verdict). He was initially sentenced to 180 months of imprisonment, plus 5 years of supervised release. *See* Docket No. 134 (minutes). However, in April 2021, the Court granted his motion for compassionate release and re-sentenced him to time served, plus 5 years of supervised release. *See* Docket No. 233 (minutes).

Several months later, in December 2021, Mr. McGee was pulled over for a traffic stop. When the patrol officer ran a record check on Mr. McGee, he found there was an outstanding warrant against Mr. McGee for failing to register as a sex offender (*i.e.*, based on the state law offense discussed above). After learning of this information, Mr. McGee's federal probation officer filed a Form 12 petition with this Court, stating that there was probable cause to believe Mr. McGee violated the mandatory condition that he shall not commit another federal, state, or local crime. Form 12 petitions were also filed in May 2022 and January 2023 on the same basis. *See* Docket No. 258 (Order at 2-3).

In June 2023, the government moved for revocation of supervised release because of Mr. McGee's failure to register as a sex offender. *See* Docket No. 254 (motion). In its order addressing that motion, issued in August 2023, the Court began by recognizing that, "[u]nder the law in effect at the time of Mr. McGee's juvenile adjudication [in 1994], which gave rise to his duty to register, his obligation to register would have terminated when he turned 25 years old on March 30, 2002." Docket No. 258 (Order at 4); *see also* Cal. Pen. Code § 290(d)(4) (1993) ("The duty to register under this section for offenses adjudicated by a juvenile court shall terminate when a person reaches the age of 25 years."). However, beginning in 1995, changes were made in the relevant state laws. This included removal of

> the provision ending a juvenile offender's duty to register at age 25. This occurred less than four months after Mr. McGee's juvenile adjudication and more than five years before his parole from CYA custody. After this amendment, the text of § 290 controlled the registration of juvenile offenders until Cal. Penal Code § 290.008 went into effect in 2007. This section was further amended in 2017 through the Sex Offender Registration Act. [That] act went into full

1    effect on January 1, 2021.

2    Docket No. 258 (Order at 4-5).

3         The Court then noted that, under the governing law, Mr. McGee was required to register

4    for 10 years (given the nature of his sex offense) after his release from CYA custody.  Because he

5    was released from CYA custody in November 2000, that ordinarily would have meant the

6    registration requirement would end in November 2010.  However, the governing law also

7    provided for tolling of the 10-year registration requirement during periods where the individual

8    subject to the registration requirement was incarcerated.  *See* Docket No. 258 (Order at 5).  Mr.

9    McGee was incarcerated (as an adult) after his release from CYA custody.  Thus, "it [was] the

10   tolling . . . during periods of incarceration that extend[ed] Mr. McGee's requirement" to at least

11   November 2026.  Docket No. 258 (Order at 5).

12        The Court, therefore, rejected Mr. McGee's position that he was not required to register as

13   a sex offender under California law.  However, the Court still denied the government's motion to

14   revoke supervised release because it found that Mr. McGee did not *willfully* fail to register.  *See*

15   Docket No. 258 (Order at 4-5, 8) (taking into account the various changes in the law on the

16   registration requirement; therefore concluding that "Mr. McGee had a sincere and nonfrivolous

17   basis to believe that the registration requirement no longer applied to him").  The Court made clear

18   that, moving forward, Mr. McGee was required to register through at least November 2026.  *See*

19   Docket No. 258 (Order at 5, 8) (stating that "Mr. McGee is now on notice of his obligation to

20   register until at least November 2026").

21        As stated above, the Court issued its order denying the motion to revoke supervised

22   release, but finding Mr. McGee obligated to register as a sex offender, in August 2023.

23   Subsequently, in June 2024, a federal probation officer again charged Mr. McGee with a violation

24   of the terms of his supervised release.  Among the violations identified was failure to register as a

25   sex offender.  The Court held an evidentiary hearing to determine whether Mr. McGee had

26   violated the terms of his supervised release.  It concluded that Mr. McGee had violated some, but

27   not all, terms.  Specifically, the Court concluded that Mr. McGee had violated the terms of his

28   supervised release by failing to register as a sex offender (a crime under state law) and failing to

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1   report for a mental health counseling session.[2]  Thus, the Court revoked Mr. McGee's supervised

2   release and sentenced him to 12 months, plus 1 day, of incarceration, with an additional 2 years of

3   supervised release.  *See* Docket No. 301 (minutes for hearing held on 9/10/2024); Docket No. 303

4   (judgment regarding revocation of supervised release and new sentence, filed on 9/13/2024).

5         On September 10, 2024 – the same day the Court issued its oral decision revoking

6   supervised release and imposing a new sentence – Mr. McGee appealed the decision.  Docket No.

7   300 (notice of appeal).

8         While the appeal was pending, Mr. McGee filed, as a pro se litigant, a Rule 59(e) motion

9   asking the court to reconsider its September 2024 decision revoking his supervised release and

10  imposing a new sentence.  *See* Docket No. 311 (pro se motion).  The Court asked Mr. McGee's

11  CJA counsel – who had been appointed for his appeal – to file a status report on the Rule 59(e)

12  motion.  *See* Docket No. 326 (Order at 4).  In the status report, Mr. McGee's counsel suggested

13  that the Court could provide an indicative ruling on the motion to reconsider (in spite of the

14  pending appeal) pursuant to Federal Rule of Criminal Procedure 37.  The Court subsequently

15  allowed Mr. McGee and the government to provide briefing on the matter.  *See* Docket No. 328

16  (order).

## II.     DISCUSSION

17  A.     Rule 37

19        Mr. McGee's motion for an indicative ruling is made pursuant to Rule 37.  Rule 37

20  provides in relevant part as follows:

21           (a)     Relief Pending Appeal.  If a timely motion is made for relief
22                  that the court lacks authority to grant because of an appeal

---

[2] The Court made this finding even though it recognized that two state courts had dismissed charges brought against Mr. McGee for failure to register as a sex offender.  *See* Mot., Ex. A (attachments to letter, reflecting that, in July and August 2023, charges brought in state court for failure to register were dismissed).  *But see* Docket No. 311 (Mot., Ex. A) (order issued by state court in September 2024, denying Mr. McGee's motion to declare that he was not required to register; "Defendant provides no evidence that he is not subject to Section 290 registration and thus has not demonstrated an 'actual controversy'" and, "to the extent that Defendant cites the potential harm of being subject to prosecution for failure to register, he may presumably defend against any such prosecution by showing that he is not required to register"); Docket No. 331 (Supp. Br., Ex. 1) (state court minute order) (holding Mr. McGee to answer with respect to, *e.g.*, a charge that he failed to register).

that has been docketed and is pending, the court may:

(1)    defer considering the motion;

(2)    deny the motion; or

(3)    state either that it would grant the motion if the court
       of appeals remands for that purpose or that the
       motion raises a substantial issue.

Fed. R. Crim. P. 37(a).

The text of the rule is similar to that contained in Federal Rule of *Civil* Procedure 62.1. Indeed, the advisory committee notes for Rule 37 indicate that, like Rule 62.1, Rule 37 "adopts for any motion that the district court cannot grant because of a pending appeal the practice that most courts follow when a party makes a motion under Rule 60(b) of the Federal Rules of Civil Procedure to vacate a judgment that is pending on appeal." Fed. R. Crim. P. 37, advisory committee notes. The advisory committee notes for Rule 37 also state "the Committee anticipates that Criminal Rule 37 will be used primarily if not exclusively for newly discovered evidence motions under Criminal Rule 33(b)(1), reduced sentence motions under Criminal Rule 35(b), and motions under 18 U.S.C. § 3582(c)." *Id.* On the other hand, "Rule 37 does not attempt to define the circumstances in which an appeal limits or defeats the district court's authority to act in the face of a pending appeal." *Id.*

B.    Motions for Which an Indicative Ruling May be Sought

According to the government, the Court should outright deny Mr. McGee's request for an indicative ruling because his motion to reconsider is not the kind of motion for which an indicative ruling may be sought.

On the one hand, as indicated above, the advisory committee notes suggest that Rule 37 would "be used primarily if not exclusively for newly discovered evidence motions under Criminal Rule 33(b)(1), reduced sentence motions under Criminal Rule 35(b), and motions under 18 U.S.C. § 3582(c)." *Id.* Mr. McGee's motion to reconsider does not fall under any of these categories. The government also makes policy-based arguments as to why it would be inappropriate to provide an indicative ruling on the kind of motion that Mr. McGee brings here. *See, e.g.*, Opp'n at 8-11 (contending that a request for an indicative ruling under Rule 37 should be

United States District Court
Northern District of California

1   limited to situations in which fact finding is needed or there is a change in the law – *i.e.*, Rule 37

2   should not cover the situation where a defendant asks for reconsideration on the "very substance

3   of [the] appeal"; also arguing that allowing a dual track puts "an enormous strain on court

4   resources") (emphasis omitted).

5        On the other hand, Rule 37 on its face does not limit what kind of motion may be the

6   subject of a request for an indicative ruling.  Furthermore, to the extent Rule 37 was meant to

7   mimic the Federal Rules of Civil Procedure, Rule 62.1 seems to contemplate a request for an

8   indicative ruling on a Rule 60(b) motion, and a Rule 60(b) motion may be brought on a number of

9   different grounds.

10        For purposes of this order, the Court need not dispositively rule on the issue.  The Court

11   assumes that Mr. McGee's motion to reconsider is an appropriate subject of a request for an

12   indicative ruling under Rule 37.  However, as discussed below, even with this assumption, the

13   Court denies Mr. McGee's request for relief.

14   C.    <u>Timeliness of Motion to Reconsider</u>

15        The government argues next that the request for an indicative ruling should be denied

16   because Mr. McGee did not *timely* file his motion to reconsider.  Rule 37 does require that a

17   timely motion for relief be made; however, on its face, it does not address what constitutes a

18   timely motion.

19        The government maintains that, under any measure, it is clear Mr. McGee's motion to

20   reconsider is untimely.  The government points out that the motion to reconsider was not filed

21   until October 2024, even though the issues it raises were decided back in August 2023 (*i.e.*, when

22   the Court *denied* the government's motion to revoke supervised release but only because Mr.

23   McGee did not *willfully* fail to register as a sex offender).  *See* Docket No. 258 (order).  Although

24   the government's position is not without some appeal, the Court rejects it.  In its August 2023

25   order, the Court did make rulings against Mr. McGee on certain issues; however, it ultimately

26   denied the government's motion to revoke supervised release.  That being the case, there was, in

27   effect, no adverse order for Mr. McGee to challenge at that time.

28        The Court subsequently did revoke Mr. McGee's supervised release, with a judgment

6

1    being issued on September 13, 2024.[3]  Mr. McGee then filed his motion to reconsider on August

2    10, 2024.  Thus, the question for the Court is whether the motion to reconsider – filed about a

3    month after the Court's order – was untimely.

4         In several cases, the Ninth Circuit has indicated that a motion to reconsider is timely so

5    long as filed within the time to appeal.  *See United States v. Belgarde*, 300 F.3d 1177, 1180 (9th

6    Cir. 2002) ("A motion for reconsideration is timely if it is timely filed within the time for appeal . .

7    . ."[4]); *see also United States v. Marshall*, 505 Fed. Appx. 617, 618 (9th Cir. 2013) ("The Federal

8    Rules require motions for reconsideration to be filed within the time for appeal [under Federal

9    Rule of Appellate Procedure 4(b)]."), *United States v. Arteaga-Centeno*, 836 Fed. Appx. 589, 589-

10   590 (9th Cir. 2021) ("[T]he [government's] motion for reconsideration was timely because it was .

11   . . within 30 days of the district court's order dismissing the indictment.").  Other courts have

12   reached the same conclusion.  For example, in *United States v. Randall*, 666 F.3d 1238 (10th Cir.

13   2011), the Tenth Circuit held such, explaining that "[t]he same considerations that justify limiting

14   the time to appeal – such as judicial efficiency and the finality of criminal sentences – also justify

15   limiting the time to seek reconsideration in the district court."  *Id.* at 1242.  If a motion to

16   reconsider could be brought "indefinitely," then

17            defendants could circumvent [Federal Rule of Appellate Procedure]
18            4(b).  A defendant who received an adverse order could let the time
             to appeal pass, but later move for reconsideration.  Thus, the
19            defendant could appeal the court's decision on the reconsideration
             motion and thereby obtain appellate review of the original order,
20            despite failing to comply with Rule 4(b).

21   *Id.* at 1242-43; *see also United States v. Redd*, 630 F.3d 649, 650 (7th Cir. 2011) (stating that

22   "[o]nly a motion filed within the time for appeal acts as a genuine request for reconsideration").

23         Given the authorities above, the Court deems Mr. McGee's motion to reconsider

24

25

26   [3] The Court made an oral ruling that it was revoking supervised release and imposing a new
     sentence on September 10, 2024.  As noted above, Mr. McGee filed his appeal on that same day.

27   [4] Federal Rule of Appellate Procedure 4(b) provides that, in a criminal case, a defendant has 14
28   days to appeal, and the government 30 days.  *See* Fed. R. App. P. 4(b).

United States District Court
Northern District of California

untimely.[5]  Mr. McGee had 14 days after the final judgment to appeal the Court's order revoking his supervised release and sentencing him to a new term.  While Mr. McGee timely filed his appeal within 14 days (indeed, he appealed the same day as the Court's order), his motion to reconsider was not filed until some 27 days after the final judgment.

Mr. McGee suggests that, even if his motion to reconsider is technically untimely, that does not mean that this Court lacks *jurisdiction* to consider it – which "makes sense since the 14-day time limit for appealing is *itself* not jurisdictional."  Mot. at 13 (emphasis in original).  But even if there is no jurisdictional bar (the government argues there is, *see* Opp'n at 6 (asserting that, once the time to appeal passed and Mr. McGee did appeal, "the only reasonable conclusion is that this Court lacks jurisdiction to hear his motion to reconsider that very same issue")), that does not mean that the deadline should not be enforced.  *Cf. United States v. Thomas*, 711 Fed. App. 853, 854 (9th Cir. 2017) (stating that "Rule 4(b) is an 'inflexible claim processing rule'"; citing in support *United States v. Sadler*, 480 F.3d 932, 940 (9th Cir. 2007)).

The Court therefore denies the motion for an indicative ruling on the basis that the motion to reconsider was not timely filed.[6]

D.    Merits of Motion to Reconsider

Even if Mr. McGee's motion to reconsider was timely filed, or the Court was to give him

_____

[5] Mr. McGee has cited some district court cases to support his contention that a motion to reconsider is timely so long as filed within 28 days (*i.e.*, the deadline for a motion to reconsider under Federal Rule of Civil Procedure 59(e)).  Those cases, however, are not persuasive.  For example, in *United States v. Kim*, No. 13-00303 SOM, 2022 U.S. Dist. LEXIS 228434 (D. Haw. Dec. 20, 2022), the district court simply stated that, "[i]n ruling on motions for reconsideration in criminal cases, courts have relied on the *standards* governing Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure."  *Id.* at *2.  The court did not – at least not clearly – adopt the *timelines* provided for in those rules.  Notably, the defendant in *Kim* moved for reconsideration less than two weeks after the challenged order was filed, *i.e.*, within the time to appeal.  *See id.* at *1.

[6] Mr. McGee did not make any argument that he should have been given 30 days to file his motion to reconsider because Federal Rule of Appellate Procedure 4(b)(4) provides that, "[u]pon a finding of excusable neglect or good cause, the district court may – before or after the time has expired, with or without motion and notice – extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b)."  Fed. R. App. P. 4(b)(4).  The Court therefore does not address this issue but notes that Mr. McGee did not file a request for an extension to appeal.  Indeed, he appealed the same day the Court issued its oral ruling revoking supervised release and imposing a new sentence.

1    relief from the late filing, Mr. McGee would fare no better because the motion to reconsider, on

2    the merits, is not persuasive.[7]

3        1.    <u>Registration Requirement</u>

4        Mr. McGee argues that the Court erred in revoking his supervised release because he was

5    not, in fact, required to register as a sex offender.  The Court does not agree.

6        The California Sex Offender Registration Act provides the relevant law on registration

7    requirements.  *See* Cal. Pen. Code § 290(a) ("Sections 290 to 290.024, inclusive, shall be known,

8    and may be cited, as the Sex Offender Registration Act.  All references to "the Act" in those

9    sections are to the Sex Offender Registration Act.").  The first provision of the Act can be found at

10   § 290.  Section 290(f) states that "[t]his section does not require a ward of the juvenile court to

11   register under the Act, except as provided in Section 290.008."  *Id.* § 290(f).

12       Section 290.008(a), in turn, states as follows:

> Any person who, on or after January 1, 1986, is discharged or
> paroled from the Department of Corrections and Rehabilitation to
> the custody of which they were committed after having been
> adjudicated a ward of the juvenile court pursuant to Section 602 of
> the Welfare and Institutions Code because of the commission or
> attempted commission of any offense described in subdivision (c)
> shall register in accordance with the Act unless the duty to register is
> terminated pursuant to Section 290.5 or as otherwise provided by
> law.

18   Cal. Pen. Code § 290.008(a).  Section 290.008(c) states that "[a]ny person described in this section

19   who committed an offense in violation of [*inter alia* § 288] shall be required to register pursuant to

20   the Act."  *Id.* § 290.008(c).  As noted above, Mr. McGee was found to have violated § 288 during

21   proceedings in juvenile court.

22       According to Mr. McGee, § 290.008 does not impose on him a requirement to register

23   because § 290.008(a) requires registration only if a person is "discharged or paroled from the

24   Department of Corrections and Rehabilitation," *id.* § 290.008(a), and he was released from the

25   custody of the California Youth Authority ("CYA").  Mr. McGee maintains that the Department

26

27   ───────────────────

28   [7] The Court acknowledges the government's contention that Mr. McGee has failed to show that he
     has complied with the applicable Local Rules on reconsideration.  For purposes of this order, the
     Court assumes the Local Rules do not impose any bar.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   of Corrections and Rehabilitation is distinct from and does not include the CYA, citing in support

2   California Penal Code § 5000, which states that "[a]ny reference to the Department of Corrections

3   in this or any other code refers to the Department of Corrections and Rehabilitation, Division of

4   *Adult* Operations." *Id.* § 5000(a) (emphasis added).

5          The Court rejects Mr. McGee's argument for several reasons.  First, he glosses over the

6   fact that § 5000 references only "the Department of Corrections," whereas § 290.008 refers to "the

7   Department of Corrections *and Rehabilitation*."  This semantic difference is material.  In 2005, the

8   Department of Corrections and Rehabilitation was restructured to include additional departments

9   under its umbrella, and laws were updated to reflect the change.  Through restructuring, the CYA

10  essentially became the Division of Juvenile Justice ("DJJ") and was housed within the Department

11  of Corrections and Rehabilitation.  *See In re Jose T.*, 191 Cal. App. 4th 1142, 1145 n.1 (2010)

12  ("Effective July 1, 2005, the correctional agency formerly known as the California Youth

13  Authority (CYA) became known as the Division of Juvenile Facilities (DJF).  DJF is part of the

14  Division of Juvenile Justice, which in turn is part of the Department of Corrections and

15  Rehabilitation.").  Thus, *e.g.*, California Government Code § 12838 specifies: "The Department of

16  Corrections *and Rehabilitation* shall consist of Adult Operations, Adult Programs, Health Care

17  Services, *Juvenile Justice,* the Board of Parole Hearings, the Board of Juvenile Hearings, the State

18  Commission on Juvenile Justice, the Prison Industry Authority, and the Prison Industry Board."

19  Cal. Gov. Code § 12838 (emphasis added).  *See also People v. I.B.*, 104 Cal. App. 5th 702, 708

20  (2024) ("The registration requirements under section 290.008 apply only to a minor committed to

21  and either discharged or paroled from the DJJ.").  Accordingly, when § 290.008(a) refers to the

22  Department of Corrections *and Rehabilitation*, it is including release from the CYA (or rather, the

23  equivalent of the CYA which is the Division of Juvenile Justice).

24         Second, the above interpretation of § 290.008(a) is consistent with its predecessor statute

25  which provided as follows: "Any person who, on or after January 1, 1986, is discharged or paroled

26  from *the Department of the Youth Authority* to the custody of which he or she was committed after

27  having been adjudicated a ward of the court . . . because of the commission or attempted

28  commission of the offenses described in paragraph (3) shall be subject to registration under the

procedures of this section." Cal. Pen. Code § 290(d)(1) (1994) (emphasis added).  Mr. McGee has pointed to no authority suggesting that, when § 290.008(a) was enacted, the California legislature intended to depart from a registration requirement for persons released from the CYA or its equivalent.

Third, Mr. McGee ignores other provisions in § 290.008 that shed light on what the legislature meant when it referred to a discharge or parole from "the Department of Corrections and Rehabilitation."  Specifically, § 290.008(a) should be examined in conjunction with § 290.008(b).

> (a)     Any person who, on or after January 1, 1986, is discharged or paroled from **the Department of Corrections and Rehabilitation** to the custody of which they were committed after having been adjudicated a ward of the juvenile court pursuant to Section 602 of the Welfare and Institutions Code because of the commission or attempted commission of any offense described in subdivision (c) shall register in accordance with the Act unless the duty to register is terminated pursuant to Section 290.5 or as otherwise provided by law.

> (b)     Any person who is discharged or paroled from **a facility in another state that is equivalent to the Division of Juvenile Justice**, to the custody of which they were committed because of an offense which, if committed or attempted in this state, would have been punishable as one or more of the offenses described in subdivision (c) shall register in accordance with the Act.

Cal. Pen. Code § 290.008(a)-(b) (emphasis added).  By referring to the "equivalent to the Division of Juvenile Justice" in § 290.008(b), it is clear that the Division of Juvenile Justice *is* encompassed in "the Department of Corrections and Rehabilitation" referred to in § 290.008(a).  Indeed, it would make no sense for the legislature to impose a registration requirement on persons discharged or paroled from a non-California facility that is equivalent to the Division of Juvenile Justice, but not a registration requirement on persons discharged or paroled from the Division of Juvenile Justice (or the CYA as it existed before the restructuring in 2005).  *See People v. Cooper*, 54 Cal. App. 5th 106, 115 (2020) ("Because [a] statute is passed as a whole and not in parts or sections[,] . . . each part or section should be construed in connection with every other part or section so as to produce a harmonious whole, and we therefore interpret subdivision (c) in light of

11

1   section 1170.95's other subdivisions.") (internal quotation marks omitted).

2          Fourth, to the extent Mr. McGee suggests it was impossible for him to have been released

3   from the Department of Corrections and Rehabilitation because that entity did not formally exist at

4   the time he was released from CYA custody, that argument lacks merit.  As the government

5   argues, it is highly unlikely that "the California legislature somehow meant to exclude large

6   numbers of sex offenders from the registry simply by updating the name of its juvenile justice

7   program."  Opp'n at 12.

8          Finally, the statute that Mr. McGee cites in his supplemental brief, *see* Cal. Wel. & Instit.

9   Code § 731(a), does not establish that § 290.008(a) requires a release from the Division of Adult

10  Operations and does not include a release from the Division of Juvenile Justice (or CYA).  Section

11  731(a) provides as follows:

> If a minor is adjudged a ward of the court on the grounds that the
> minor is a person described by Section 602, the court may commit
> the ward to the Department of Corrections and Rehabilitation,
> Division of Juvenile Justice if the ward has committed an offense
> described in . . . subdivision (c) of Section 290.008 of the Penal
> Code, and has been the subject of a motion filed to transfer the ward
> to the jurisdiction of the criminal court as provided in subdivision
> (c) of Section 736.5 and is not otherwise ineligible for commitment
> to the division under Section 733.

17  Cal. Wel. & Instit. Code § 731(a).  That § 731(a) refers specifically to the Division of Juvenile

18  Justice does not mean that a reference to the "Department of Corrections *and Rehabilitation*" in §

19  290.008(a) does not include the Division of Juvenile Justice (or CYA).  The language of the latter

20  statute indicates that it does.

21         2.    Tolling

22         Mr. McGee contends that, even if he was required to register under § 290.008, he only had

23  to register for 10 years – *i.e.*, the registration requirement should have ended in November 2010.

24  In its prior order, the Court acknowledged that, ordinarily, that would have been the case, but the

25  governing law provides for tolling of the 10-year registration period during periods when the

26  individual subject to the registration requirement was incarcerated.  *See* Docket No. 258 (Order at

27  5) (stating that "it is the tolling . .  during periods of incarceration that extend[ed] Mr. McGee's

28  requirement" to at least November 2026).  There is no dispute that Mr. McGee has been

United States District Court
Northern District of California

12

incarcerated as an adult during the relevant time period.

The tolling provision at issue is found in § 290 of the California Sex Offender Registration Act. *See* Cal. Pen. Code § 290(e) ("The minimum time for the completion of the required registration period for a designated tier is tolled during any period of subsequent incarceration, placement, or commitment, including any subsequent civil commitment, except that arrests not resulting in conviction, adjudication, or revocation of probation or parole shall not toll the required registration period."). Section 290.008 itself does not contain a tolling provision. According to Mr. McGee, because § 290.008 does not have a tolling provision, and a juvenile is required to register under this section only and not § 290, the Court erred in "importing" the tolling provision from § 290.

Mr. McGee's assertion lacks merit. Both § 290 and § 290.008 are part of the California Sex Offender Registration Act. *See* Cal. Pen. Code § 290(a) ("Sections 290 to 290.024, inclusive, shall be known, and may be cited, as the Sex Offender Registration Act. All references to "the Act" in those sections are to the Sex Offender Registration Act."). Section 290.008 provides that a person "discharged or paroled . . . after having been adjudicated a ward of the juvenile court . . . shall register in accordance with the Act . . . ." *Id.* § 290.008(a). Since § 290 is part of the Act, the tolling provision in § 290(e) applies even where the registration requirement arises in the first instance from § 290.008. *See* Opp'n at 12 ("'The Act' . . . refers to the entirety of the statutory scheme enacted, including the tolling provisions of § 290, and not just one particular section of that Act as McGee would have it.").[8]

Moreover, the absence of a tolling provision in § 290.008 is not conclusive. *Cf. Burns v. United States*, 501 U.S. 129, 136 (1991) (noting that, "[i]n some cases, Congress intends silence to rule out a particular statutory application, while in others Congress' silence signifies merely an expectation that nothing more need be said in order to effectuate the relevant legislative objective"). It appears that the legislative intent behind the 2017 changes to § 290 and § 290.008

---

[8] To be sure, § 290(f) also states that "[t]his section does not require a ward of the juvenile court to register under the Act, except as provided in Section 290.008." Id. § 290(f). But § 290.008 nevertheless incorporates by reference § 290.

– which included the addition of the tolling provision in § 290(e) – was to establish and differentiate registry tiering for adults and juveniles.  *See* Cal. Senate Bill 384, Enrolled Bill Report at 1 (Sept. 8, 2017) ("Senate Bill (SB) 384 recasts, effective January 1, 2021, the California sex offender registry into a three-tiered registration system for periods of 10 years, 20 years, or life for a conviction in adult court of specified sex offenses, and 5 years or 10 years for an adjudication as a ward of the juvenile court for specified sex offenses.").  Nothing in the legislative history suggests that the legislature intended to have tolling apply solely to adults, and not juveniles.  Indeed, that tolling for juveniles was a part of the scheme is implicit in the language of § 290.008 which provides that "[a] tier one juvenile offender is subject to registration for a *minimum* of five years" and that "[a] tier two juvenile offender is subject to registration for a *minimum* of 10 years." Cal. Pen. Code § 290.008(d)(1)-(2) (emphasis added).  It is also notable that § 290.008 refers to individuals who were "committed" to the Department of Corrections and Rehabilitation after being adjudicated a ward of the juvenile court, *id.* § 290.008(a), and § 290(e) – which contains the tolling provision – begins with the statement that "[t]he minimum time for the completion of the required registration period in tier one or two commences on the date of release from incarceration, placement, *or commitment*, including any related civil commitment on the registerable offense" *Id.* § 290(e) (emphasis added).  The fact that § 290(e) refers to "commitment" and that § 290.008 concerns commitment to the Division of Juvenile Justice suggests that tolling does apply to § 290.008.

Accordingly, the Court concludes, as it did before, that the tolling provision found in § 290 applies even where the registration requirement arises in the first instance from § 290.008.  The Court rejects Mr. McGee's contentions that the rule of lenity or void-for-vagueness doctrine applies to the case at bar.

### 3.    Ex Post Facto

In the pending motion, Mr. McGee re-raises the issue that subjecting him to the current California Sex Offender Registration Act would violate the Ex Post Facto Clause.  *See United States v. Elkins*, 683 F.3d 1039, 1044 (9th Cir. 2012) (noting that "Article I, Section 10 of the Constitution bars the enactment of any law that 'imposes a punishment for an act which was not

United States District Court
Northern District of California

1    punishable at the time it was committed; or imposes additional punishment to that then

2    prescribed'"). At the time Mr. McGee was adjudicated a ward of the juvenile court, the only

3    registration requirement was that he register through age 25; the current registration scheme

4    requires that he register for 10 years but tolls the registration period during times that he was

5    incarcerated.

6          As an initial matter, the Court is not inclined to address the ex post facto issue because it

7    was not raised in Mr. McGee's original motion to reconsider. Nor did his counsel raise the issue

8    in the status report requested by the Court.

9          However, even if the Court were to consider the merits, the Court is not persuaded by Mr.

10   McGee's contention that the registration requirements are punitive in nature. There is nothing to

11   indicate that the California legislature intended the California Sex Offender Registration Act to

12   impose punishment as opposed to establish a civil, nonpunitive regulatory scheme, *see* Docket No.

13   258 (Order at 6) (stating that, "[g]iven the uniform precedent holding sex offender registration to

14   be a nonpunitive, civil requirement, the Court cannot glean a contrary intent of the California

15   legislature"); therefore, application of that regulatory scheme to Mr. McGee will violate the Ex

16   Post Facto Clause only if it is "'so punitive either in purpose or effect as to negate' [the legislative

17   body's] intent." *Id.* at 1044-45.

18         In its prior order denying the government's motion to revoke Mr. McGee's supervised

19   release, the Court explained that the registration scheme as applied to Mr. McGee was not punitive

20   – even though it extended the period during which he was required to register – for the following

21   reason: while "[t]here may be circumstances where the extension of a registration obligation may

22   become punitive in nature as applied to a juvenile, particularly where a new burdensome

23   obligation is imposed retrospectively where the extension is not occasioned by new conduct,"

24   here, "the relevant extension . . . occurred as a result of Mr. McGee's behavior as an adult after his

25   juvenile conviction; he was subjected to two lengthy periods of incarceration due to felonies he

26   committed as an adult." Docket No. 258 (Order at 6). The Court also noted that "Mr. McGee's

27   registration would have been public until age 25 prior to any law changes, so the amendments did

28   not make public information that 'would otherwise permanently remain confidential.'" Docket

No. 258 (Order at 6-7); *see also Elkins*, 683 F.3d at 1049 (holding that application of a federal sex offender registration law to the defendant was not punitive because application of the law "did not make 'public otherwise confidential delinquency records relating to sexual offenses' and did not substantially change [his] obligation to register as a sexual offender").

The arguments that Mr. McGee raises in his pending motion do not persuade the Court to alter its analysis above.  For example, Mr. McGee suggests that, even if his registration would have been public until age 25 (*i.e.*, under the old registration scheme), once he did reach that age, his registration records would have been automatically *destroyed*, *see* Cal. Pen. Code § 290(d)(6) (1994) (providing that "[a]ll records specifically relating to the registration in the custody of the Department of Justice, law enforcement agencies, and other agencies or public officials shall be destroyed when the person who is required to register attains the age of 25 years or has his or her records sealed under the procedures set forth in Section 781 of the Welfare and Institutions Code"), in which case he would no longer be publicly shamed today.  *See* Mot. at 23 (arguing that Mr. McGee's juvenile adjudication "has been publicly bandied about decades later, when he is 47 years old").  While the Court is not unsympathetic to Mr. McGee's situation, it also notes that the question here is whether the current registration scheme imposes a new significant burden by eliminating the automatic destruction of registration records at age 25.  *See Smith v. Doe*, 538 U.S. 84, 99-100 (2003) (in assessing whether Alasa's registration scheme was punitive in nature, "consider[ing] whether the Act subjects respondents to an 'affirmative disability or restraint'"; "we inquire how the effects of the Act are felt by those subject to it [and,] [i]f the disability or restraint is minor and indirect, its effects are unlikely to be punitive").  The current registration scheme still leaves open the avenue of destruction of registration records if "the person who is required to register has their records sealed under the procedures set forth in Section 781 of the Welfare and Institutions Code."  *Id.* § 290.008(f).  Because this avenue is left open, the Court cannot say that the current registration scheme is punitive as to Mr. McGee.  To be sure, Mr. McGee does not appear to meet the requirements for sealing under § 781, *see* Cal. Wel. & Inst. Code § 781(a)(1)(A) (indicating that a person must not have been "convicted of a felony or any misdemeanor involving moral turpitude"), but again that is based on his conduct as an adult, not

on an inherent aspect of the statute.

4.    Dolman Mental Health Document

All of Mr. McGee's arguments above are targeted at the Court's revocation of his supervised release because he had failed to register as a sex offender in compliance with state law. However, the Court also revoked Mr. McGee's supervised release not only because of a failure to register but also because of a failure to report for a mental health counseling session.

In the pending motion, Mr. McGee asserts that the "lone evidence presented by the government that [he] missed a mental-health assessment . . . was a document . . . from Dolan Mental Health stating as much." Mot. at 26. Mr. McGee then argues that the Court erred in admitting the Dolan record because the government failed to produce a witness to lay the foundation for the record. *See United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999) (stating that "every releasee is guaranteed the right to confront and cross-examine adverse witnesses at a revocation hearing, unless the government shows good cause for not producing the witnesses").

The Court does not entertain this argument because it was never raised by Mr. McGee, either in his pro se motion to reconsider when first filed in October 2024 or even when (now represented by counsel) he filed his status report in December 2024. Even if the Court were to entertain the merits, the Court reaffirms its prior holding that there was no *Comito* violation. *See* Docket No. 324 (ECF Page 118) (orally ruling that "the *Comito* concerns, as amplified by [*United States v.*] *Walker* [117 F.3d 417 (9th Cir. 1997), are satisfied because there is sufficient reliability" for the Dolan record; "the first layer of hearsay is met by the public records exception[,] . . . the second layer of hearsay is met by the business record exception[,] [a]nd there is no indicia of unreliability").[9]

---

[9] In *Walker*, the defendant was placed on supervised release under Probation Officer Salsedo. "However, at the revocation hearing, the government called . . . Probation Officer Trusso as a witness instead of Probation Officer Salsedo," and, "[w]hen Trusso undertook to testify from Walker's file prepared by Probation Officer Salsedo," the defendant's attorney objected on the basis of hearsay. *See Walker*, 117 F.3d at 419.

    The Ninth Circuit held that the testimony was not inadmissible. The Federal Rules of Evidence do not apply in supervised release revocation proceedings, and although a defendant is

United States District Court
Northern District of California

### III.    CONCLUSION

For the foregoing reasons, the Court denies Mr. McGee's motion for relief.  The motion to reconsider was not timely filed, and therefore no indicative ruling is warranted.  Furthermore, even if there were no time bar, the Court would deny the motion to reconsider.  Thus, at this juncture, Mr. McGee should simply proceed with his appeal.

This order disposes of Docket No. 329.


**IT IS SO ORDERED**.


Dated: April 28, 2025

_____
EDWARD M. CHEN
United States District Judge

---

entitled to minimal due process, including the right to confront and cross-examine adverse witnesses, the right to confrontation at a revocation hearing does not rise to level of similar rights at a criminal trial.  *See id.* at 420.  "[I]n determining whether the admission of hearsay evidence violates the releasee's right to confrontation, the trial court must balance the releasee's 'right to confrontation against the Government's good cause for denying it.'"  *Id.*  Factors that may be considered include: "the importance of the evidence to the court's finding, the releasee's opportunity to refute the evidence, . . . the consequences of the court's finding," "the difficulty and expense of procuring witnesses, and the traditional indicia of reliability borne by the evidence."  *Id.* (internal quotation marks omitted).

In *Walker* itself, the testimony of the probation officer was admissible as it was reliable.  "Probation Officer Trusso testified from records maintained by Probation Officer Salsedo, and as [the defendant] concedes in his reply brief, the testimony was most likely admissible as a public records exception to hearsay under Federal Rule of Evidence 803(8)."  *Id.* at 420-21.  The defendant also failed to offer any contrary evidence.  *See id.* at 421.